## Sherman Willard *versus* John Butler, Principal, and Henry P. Howe, Trustee.

By the answers of one summoned as trustee, it appeared that he was a lessee at will of a paper mill; that by his agreement with the principal defendant as a laborer in the mill, the defendant was to receive his wages in orders, not negotiable, drawn by the respondent upon the owners of the mill, and in no other way, and if the defendant should be indebted to the owners at the time when an order was drawn, a discharge of such debt should be equivalent to an acceptance and payment of the order to the same amount; and that the defendant had not demanded any order for the wages due to him at the time of the service of the trustee process. There being no actual fraud in the contract, it was *held*, that the respondent was not chargeable as trustee.

Howe, the supposed trustee, disclosed in his answers, that Butler was in his employment at the time of the service of the trustee process and had then been in his employment about four years; that Howe was in the employment of Ed garton, Whitcomb & Co., in Shirley, in the manufacture of paper, and had the control of the mill; that by his contract with them, they furnished him with the mill and the stock, and he manufactured the paper; that it was a part of the contract with them, that they should answer orders drawn upon them in favor of the laborers employed by him in the manufacture of paper in the mill, which orders were not to be negotiable, and that in this way all his hands should be paid by Edgarton, Whitcomb & Co.; that the only condition in relation to the orders was, that Howe should not draw for a greater amount than he was entitled to receive from Edgarton, Whitcomb & Co., in doing their work and for paper; that he accordingly agreed verbally with Butler, that Butler should work for him in the manufacture of paper, and should from time to time receive his pay in orders drawn upon Edgarton, Whitcomb & Co. as above mentioned, and in no other way; that at the time when this process was served upon Howe, there was due to Butler the sum of $219·06, for his work under his contract; that Howe had always been ready to draw orders in favor of Butler upon Edgarton, Whitcomb & Co., not negotiable, for the wages above mentioned, and had not been called upon by Butler for such orders and refused or neglected to draw them; that the understanding between Butler and Howe was, that if

Butler should be indebted to Edgarton, Whitcomb & Co. when Howe should draw an order in favor of Butler, a discharge of such debt should be equivalent to an acceptance and payment of the order to the same amount; and that during the whole time that Butler was in Howe's employment, Howe had sufficient funds in the hands of Edgarton, Whitcomb & Co., so that an order drawn upon them in favor of Butler for his work, would have been accepted.

*Willard v. Butler & Tr*

The case was argued in writing.

*B. Russell*, for the plaintiff, contended that the respondent ought to be charged as trustee. The contract disclosed, so far as it operates as a discharge of the respondent, is, in law, fraudulent against the creditors of Butler, because it places funds in the hands of the respondent and locks them up from Butler's creditors, and at the same time leaves them subject to his control and disposal, and thereby prevents the operation of the trustee process. *Maine F. & M. Ins. Co.* v. *Weeks & Tr.* 7 Mass. R. 438; *Perry* v. *Coates & Tr.* 9 Mass. R 537; *Clark* v. *Brown & Tr.* 14 Mass. R. 271.

*G. F. Farley* for the trustee.

PUTNAM J. delivered the opinion of the Court. It appears that Edgarton, Whitcomb & Co. were the owners of the paper mill, that Howe (who is summoned as the trustee) was the lessee at will, and that he employed Butler, the principal, and the other laborers, who were to be paid by his orders upon Edgarton, Whitcomb & Co. This contract was made in 1829, and had been in operation until this suit.

*April term 1834*

And we do not perceive any thing in it, which is fraudulent. There is no suggestion that this arrangement was resorted to with a view to delay or defeat the claims of creditors, as was the contrivance in *Hooper* v. *Hills et Tr.* 9 Pick. 435.

The laborers were to be paid in this manner, as well for their own accommodation as for the benefit of the owners of the paper mill. For the latter received some advantage from the sale of their goods, and the former received some advantage from supplies to be furnished for their work, as might be necessary. If the laborers could live without taking up goods from Edgarton, Whitcomb & Co., they were entitled to receive money from them, in virtue of their agreement with

Willard
v.
Butler & Tr.

Howe to accept his orders.   So there is nothing oppressive upon the laborers.   If however it might be necessary for them to receive goods on account, as the work went on, there was a credit established, which might be very convenient for them.

If, when the wages should become due, Howe should refuse to draw his order according to his agreement, they would have a remedy against him immediately, for the breach of the con tract.   And if Edgarton, Whitcomb & Co. had not paid according to their agreement to accept, the laborer would have had a legal and immediate claim for the amount in cash.

But we think that the laborer could not have maintained an action for money for the wages, until there had been some default on the part of Howe, or Edgarton, Whitcomb. & Co., in drawing or duly honoring the orders.   If the principal defendant had demanded an order of Howe, and Howe had refused to give it, upon such refusal Howe would have been chargeable.   *Maine F. & M. Ins. Co.* v. *Weeks*, 7 Mass. R 439.

We all think that a creditor of the laborer has no right to interfere with this contract, and by this process to compe Howe to pay money instead of giving the order for the work

*Trustee discharged*